IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THEA PHILLIOU,

    Plaintiff,

        v.                                No. CIV 96-1019 BB/LFG

THE REGENTS OF THE UNIVERSITY
OF NEW MEXICO, THE STATE OF NEW
MEXICO, and DAVID WOLFE, in his
official and individual capacities,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' April 15, 1998 motion for summary judgment. (Doc. 64) Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendants' motion should be GRANTED, and this case DISMISSED.

**I. Standard**

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence

presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendants' motion for summary judgment in light of these standards.

## II. Analysis

The Court previously dismissed a number of claims raised in Plaintiff's complaint. The claims remaining to be addressed are a substantive-due-process claim for injunctive relief, an equal-protection claim, and a Title IX retaliation claim. These claims will be addressed separately.

### A. Substantive Due Process

The Court's prior opinion noted that neither the United States Supreme Court nor the Tenth Circuit has yet decided whether the substantive-due-process component of the Due Process Clause applies to executive actions taken in an academic setting. At that time, the Court decided to allow this claim to proceed pending further factual development. The Court now determines that substantive due process does not protect any right Plaintiff might have to academic advancement at the university level. Cf. C.B. v. Driscoll, 82 F.3d 383, 387 (11th Cir. 1996) (public school's suspension of student did not implicate substantive due process).

In Roe v. Antle, 964 F.Supp. 1522, 1531-33 (D.N.M. 1997), this Court held that the concept of substantive due process does not protect an individual's property interest in continued employment. The Court noted that a property interest in employment is created by state law, rather than the federal Constitution, and that the Supreme Court has been reluctant to extend substantive due process protection beyond fundamental constitutional rights. Similarly, any

interest Plaintiff might have had in continuing her graduate education was a matter of state law. The right to pursue a college or graduate degree is certainly not a fundamental constitutional right.  Cf. Driscoll, 82 F.3d at 387 (right to attend public school is state-created, rather than a fundamental constitutional right).  For constitutional purposes, the right to procedural due process is the only due-process right that is applicable to cases such as these.  Since Plaintiff has raised no procedural-due-process claim, and it is undisputed that adequate procedural protections were available to her, her due-process claim will be dismissed.

The Court notes that the claim would be dismissed even if the principles of substantive due process did apply.  Plaintiff's due-process claim is based on her assertion that Defendant Wolfe treated her arbitrarily and unfairly when he refused to grant her a second extension of time to complete her independent-study project.[1]  Plaintiff relies mainly on the fact that in refusing to grant the extension, Wolfe allegedly made derogatory comments about her ability and otherwise exhibited considerable animus toward her.  Wolfe's ill will alone, however, is not sufficient to raise a genuine issue of material fact as to whether he acted arbitrarily.  Viewed in the light most favorable to Plaintiff, the facts surrounding the independent-study are as follows:  (1) Plaintiff signed up for 12 hours of independent study under Wolfe's supervision, an extremely high number for one semester, without ever talking to Wolfe; (2) Plaintiff did not submit a completed project during that semester, and the first time Wolfe heard of the project was the summer after the

---

[1] Plaintiff had also raised a claim that Wolfe required her to re-take several core courses and obtain a minimum grade in each that other students were not required to obtain.  Plaintiff has abandoned that claim by failing to brief it, and it is not supported by the evidence.  The only evidence was that Wolfe recommended she retake the courses, because experience had shown that students who did not obtain at least a B average in the courses invariably performed poorly on the comprehensive examinations which provided much of the basis for admission to the PhD program.

Case 1:96-cv-01019-BB-WD   Document 80   Filed 04/28/98   Page 4 of 13

semester ended, when Plaintiff notified Wolfe she needed a grade for the not-yet-completed project; (3) Although Wolfe initially told Plaintiff there was nothing he could do for her because the faculty member she had been working with was not a member of the Physics department, Wolfe agreed to meet with Plaintiff and the other faculty member in August and agreed to give her an incomplete for the project, to allow her time to finish it; (4) Wolfe required Plaintiff to have the project supervised by an adjunct faculty member rather than the prior supervisor, a member of the medical-school faculty; (5) Wolfe's standard practice was to grant extensions to students who showed progress toward finishing a project; (6) Plaintiff did not contact Wolfe at all after the August meeting, did not provide any progress reports, and did not submit any work to him; (7) The first word Wolfe had that Plaintiff was requesting an extension was pursuant to notification from Dean White, to whom Plaintiff had gone without ever speaking to Wolfe about the extension; (8) Wolfe was angry about Plaintiff's request for an extension, was adamant that he would not grant it, and made disparaging remarks about her to Dean White.

    The most the above evidence can establish is that Wolfe harbored extremely negative feelings concerning Plaintiff's abilities as a doctoral candidate in physics. Despite his negative view, Wolfe agreed to allow Plaintiff an opportunity to earn the extraordinarily high number of independent-study hours for which she had registered, rather than simply giving her a failing grade immediately, as he could have done. He refused to supervise the project himself, because he had no knowledge in the area she was interested in investigating (the effect of electromagnetic rays on bone growth). No other regular physics faculty member had such knowledge either, but Wolfe allowed Plaintiff to attempt to find an adjunct faculty member who could properly supervise and grade the project. He also suggested at least one name to Plaintiff. When Plaintiff showed no

4

evidence of progress toward completing the project and instead attempted to have Dean White intercede on her behalf, Wolfe refused to give her another extension.

This is not the type of conduct that is such a substantial departure from accepted academic norms as to demonstrate that Wolfe did not exercise professional judgment.  See Harris v. Blake, 798 F.2d 419, 424-25 (10th Cir. 1986) (standard to be applied in cases such as these, assuming substantive-due-process protections are applicable).  It is clear that Plaintiff has not submitted any evidence that accepted academic norms would require a professor to grant more time to complete a project under the facts outlined above.  The substantive-due-process principle does not protect Plaintiff from Wolfe's ill will; it only protects her from arbitrary decisions resulting from that ill will.  As discussed above, Wolfe's decision-making in this case, even if ultimately motivated by animosity, did not rise to the level of a constitutional violation.

### B.  Equal Protection

Plaintiff brought her equal-protection claim under 42 U.S.C. § 1983.  She maintains that Wolfe and the other Defendants discriminated against her on the basis of gender.  In her brief, her claims of discrimination have been grouped into three types.  First, she maintains she was the victim of discrimination because a former professor lowered her grade after she refused his alleged sexual overtures.  Second, she argues Wolfe discriminated against her by refusing to extend her incomplete for one more semester.  Finally, she contends that women in the physics department have historically been treated less favorably than men.

5

**1.  Weeks Incident**

The incident involving the former professor (Weeks) has already been dealt with in the Court's prior opinion.  The Court held that the statute of limitations had expired on Plaintiff's potential § 1983 claim regarding this incident, and noted that the incident was not part of a continuing violation.  Plaintiff has not asked the Court to re-examine this determination, and the Court will not do so.  Instead, the Court reiterates its prior holding that the Weeks incident does not fall under the continuing-course-of-conduct doctrine, for two main reasons.  First, as an alleged example of *quid pro quo* sexual harassment, it was different in type and manner than any other examples of alleged harassment presented in this case.  Second, the incident was so discrete and so severe that it had the necessary permanence requiring Plaintiff to take action within the prescribed limitations period.  See Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir. 1993) (noting two of the requirements for finding a continuing violation -- similar types of discrimination, and lack of "permanence").  The Weeks incident will therefore not be considered in determining whether Plaintiff has raised a genuine issue of fact entitling her to go to trial on her equal-protection claim.

The Court notes that Plaintiff now complains that the Physics department did not handle her grievance concerning the Weeks matter in an effective manner; that is, the grade she received was never changed and remained on the books.  This is not evidence of gender discrimination, because Plaintiff did not raise the sexual-harassment allegation during her the grievance process.  The department cannot be charged with discrimination for neglecting to investigate or redress a ground for grievance that was never formally raised.  Instead, the only evidence is that the department was limited to addressing Plaintiff's only claim, that the grade was unfair because

Weeks had initially indicated Plaintiff's work on the project was very good, yet gave her a C on the final version. Furthermore, as Plaintiff admits, Weeks' contract was not renewed, at least in part because of Plaintiff's informal complaints to Wolfe as well as complaints from other students concerning Weeks' behavior toward women. Finally, Wolfe's failure to have the grade changed or to ensure that it would not count toward Plaintiff's grade-point-average is not indicative of gender discrimination, because the only evidence was that he had no authority to change the grade, and there was no evidence that he could ensure it was ignored for g.p.a. purposes. For all of the foregoing reasons, none of Plaintiff's factual allegations concerning the Weeks incident raise an issue of fact concerning her equal-protection claim.

### 2. Refusal to Grant Extension of Incomplete

Wolfe's refusal to extend Plaintiff's independent-study incomplete for another semester is an example of specific negative conduct that, if motivated by discriminatory intent, could be a ground for an equal-protection claim. In order to prove such intent, however, it was incumbent on Plaintiff to present either direct or circumstantial evidence that Wolfe acted, at least in part, on the basis of gender bias. It is not enough to show that he may have acted out of personal animus, if that animosity was not gender-based. Cf. Archuleta v. Colorado Dep't of Institutions, 936 F.2d 483, 487 (10th Cir. 1991) (Title VII does not ensure that employee will be treated fairly or discharged only for meritorious reasons; statute only prohibits discrimination on basis of specifically enumerated factors).

Plaintiff presented no direct evidence that Wolfe acted with discriminatory intent with respect to the independent-study matter. There was no evidence that he had made derogatory statements about women in general or about Plaintiff as a woman in particular. In fact, the only

7

evidence was that Wolfe reacted with great concern to the incidents of sexual harassment alleged by Plaintiff and other women students, that he hired an expert to educate the faculty and student body about the issue of gender discrimination, and that the Physics department, under Wolfe's leadership, received a favorable evaluation from a team of evaluators that was studying the atmosphere for women students in Physics departments around the country.

In addition, Plaintiff presented no evidence that Wolfe had ever treated a similarly-situated male more favorably than he treated Plaintiff.  See Gutzwiller v. Fenik, 860 F.2d 1317, 1328 (6th Cir. 1988) (jury instruction that allowed jury to find for plaintiff if it found a similarly-situated male would have been granted tenure was correct statement of equal-protection law).  For example, she presented no evidence that Wolfe had allowed a male student to have an independent-study project graded by a professor outside the Physics department, or to obtain a grade on an incomplete project even though the student had not discussed the project in advance with his faculty supervisor.  She also presented no evidence that male students under circumstances similar to hers had been given extra extensions of time to complete an independent-study project.  Absent any direct or circumstantial evidence that Wolfe was motivated by discriminatory intentions, Plaintiff has failed to raise a genuine issue of material fact concerning her equal-protection claim.

### 3. Historical Treatment of Women in Physics Department

Plaintiff appears to argue that general examples of unfavorable treatment accorded other women physics students by other faculty members are sufficient to raise an issue of fact as to whether Wolfe acted with discriminatory intent.  The Court disagrees.  Evidence that a few other professors in the department may have told sexist jokes occasionally, or asked insensitive

questions of Plaintiff, raises no question of fact about Wolfe's attitudes and intentions. As noted above, the only evidence with respect to Wolfe is that he attempted to combat sex discrimination whenever possible, and encouraged an environment that caused the Physics department to be rated as a relatively favorable place for women. Similarly, Plaintiff's evidence that other professors did not grant as much latitude to marginal female students as they did to marginal male students is not evidence that Wolfe shared a bias against women and acted on that bias with respect to the independent-study matter.

Plaintiff's historical-treatment evidence, rather than being relevant to any of her specific claims of differential treatment, appears to be similar to a hostile-educational-environment claim. Cf. Watkins v. Bowden, 105 F.3d 1344, 1355 (11th Cir. 1997) (noting that hostile-work-environment claim may be brought under Title VII or, pursuant to equal-protection principles, under § 1983). However, Plaintiff has never articulated such a claim, either in her complaint or any of the briefs she has filed in this case. Furthermore, even if she had done so, her allegations are insufficient to support a hostile-environment claim. She has presented evidence that two other women students were treated less favorably with respect to doctoral dissertations or other matters than one other man. She has also alleged generally that she was stigmatized as a student with a non-traditional background (she did not study physics in undergraduate school), even though a male student who was a philosophy major in undergraduate school was not stigmatized to "nearly the same degree." Finally, she has made allegations that two professors either made sexist comments or asked inappropriate questions on various occasions. These assertions, accepted as true and taken as a whole, simply do not rise to the level of a steady barrage of opprobrious

conduct serious enough to alter the terms and conditions of Plaintiff's studies.  See Martin, 3 F.3d at 1418 (stating standard for hostile-work-environment claim).[2]

For the foregoing reasons, the Court will hold that Plaintiff has not presented a hostile-educational-environment claim, and in any event has failed to adduce sufficient facts to support such a claim.  Furthermore, the evidence presented by Plaintiff raises no inference that Wolfe acted with discriminatory intent in refusing to extend Plaintiff's incomplete for yet another semester.

### C. Retaliation

Plaintiff claims that Wolfe retaliated against her for raising complaints about the alleged sexual harassment committed by Weeks and the harassment perpetrated by the fellow student.  Again, although Plaintiff has presented evidence that Wolfe had animosity toward her, there is no direct evidence that the animosity was created by Plaintiff's sexism complaints, or that Wolfe's actions were retaliatory in nature.  Asked in her deposition whether Wolfe had taken any action

---

[2]The most serious of Plaintiff's allegations concern the Weeks incident (the alleged case of *quid pro quo* sexual harassment) and an incident involving sexual harassment by a fellow student.  These incidents are not considered for purposes of the hostile-educational-environment issue for several reasons.  First, as discussed above, the Weeks incident is not part of a continuing course of conduct that could allow it to be considered.  Second, the fellow-student harassment, as the Court discussed in its prior opinion, was the subject of a complaint to the University's EOC office.  As a result of the complaint, the harasser was barred from campus unless he first completed a sexual-harassment-awareness session.  When he returned to the campus in violation of that order, he was chased out of the Physics building.  This incident, therefore, like the Weeks incident, has the type of "permanence" and dissimilarity to other allegations that prevents it from being part of a continuing course of conduct.  See Martin (discussing concept of "permanence" and other factors relevant to continuing-course-of-conduct analysis).  In addition, as the Court pointed out in its previous opinion, Defendants took appropriate action with respect to the fellow student to prevent any similar occurrences.  Taking such action precludes a claim that the incident can be part of a hostile-educational-environment claim, since the University cannot be held liable when it appropriately attempted to prevent the continuation of the harassing conduct.

against her as a result of such complaints, Plaintiff admitted he had not. She also admitted he had encouraged her to pursue her complaint against the fellow student, and had referred her to a female faculty member who would be able to tell her how to pursue her grievance against Weeks. There is no evidence that Wolfe was angered by Plaintiff's complaints or reacted negatively toward them at all. In fact, there is evidence that Wolfe refused to renew Weeks' contract, in part because of complaints made by Plaintiff and other women students. There is also evidence that Wolfe wrote letters to the EOC inquiring about the progress of the proceeding initiated against the fellow-student harasser. The only direct evidence, therefore, is that Wolfe was supportive of Plaintiff's complaints rather than upset by them.

Similarly, there is no circumstantial evidence that Wolfe's ill will toward Plaintiff was due to her prior complaints of sexual harassment. Her complaints occurred in 1991 or 1992, and Wolfe's refusal to extend Plaintiff's incomplete (as well as his expressions of animosity) did not occur until 1995. Such a long period of time between the protected activity and the supposed retaliatory action eliminates any inference of retaliation that might have been drawn had less time passed between the two events. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (four-month time lag between protected activity and termination is too long to allow inference of causation). Similarly, Plaintiff's complaint that Wolfe did not have the Weeks grade changed is not evidence that Wolfe was upset by Plaintiff's complaints, despite Plaintiff's argument to the contrary, because the only evidence is that Wolfe had no authority to have the grade changed. Finally, the general and vague evidence of bias against women on the part of some members of the physics faculty is not evidence that Wolfe acted out of retaliatory motives, since there was no evidence Wolfe shared those biases.

The Court notes, furthermore, that there is nothing about the independent-study incident, standing alone, that is indicative of retaliation.  Even though there may not have been a written departmental policy concerning independent-study projects, common sense would indicate that a graduate student would obtain approval in advance from a professor before attempting to obtain twelve hours of independent-study credit under that professor's supervision.  Logic also dictates that, even absent a retaliatory motive, a professor might be surprised and angered at being asked to grade a project he had never heard of, and which was not close to being finished.  Wolfe's refusal to grade the project himself is reasonable because the undisputed evidence is that he had no knowledge concerning the project topic.  Similarly, there is no evidence that any other member of the Physics department had such knowledge, and requiring Plaintiff to find an adjunct faculty member who could properly supervise and grade the project was a reasonable response to the situation.  Finally, it is entirely possible that Wolfe, having given Plaintiff an opportunity to take steps to finish her project, became quite frustrated and angry when she went over his head to Dean White instead of keeping in contact with him and letting him know of any progress (or lack thereof) she might be making.  The point of this discussion is that the only inference to be drawn in this case, on the basis of the evidence presented, is that Wolfe was angry at Plaintiff because of the circumstances surrounding her independent-study project, not because of her prior complaints of sexual harassment.  Absent a retaliatory motive for Wolfe's actions, Plaintiff cannot make out a claim of retaliation under Title IX.[3]

---

[3]The Court notes Plaintiff's reliance on the Court's statement, in the prior opinion, that extremely general allegations of motive or intent are sufficient to survive a motion to dismiss. That may be true at the motion-to-dismiss stage, but the same cannot be said of the summary-judgment stage.  It is incumbent on Plaintiff at this stage to present at least some evidence, rather than allegation, of retaliatory motive.  She has not done so.

**Conclusion**

The only evidence Plaintiff has presented in support of her claims is evidence that Dr. Wolfe was angry at her, considered her a poor physics student, and did not want her in the department any longer. Even when considered with evidence that women students in the physics department have not always been treated fairly or equally by other members of the faculty, this evidence is not sufficient to raise a genuine issue of fact as to whether Wolfe's actions were due to gender bias or to a desire to retaliate against Plaintiff for her prior complaints of sexual harassment. Also, Plaintiff has no substantive-due-process right to fair treatment in the academic setting, and has not established a violation of such a right even if it existed. For these reasons, the Court will grant Defendants' motion for summary judgment and this case will be dismissed.

An Order in accordance with this Memorandum Opinion will issue.

DATED April 28, 1998.

_____
UNITED STATES DISTRICT JUDGE